## Leonard Garland *v.* Thomas G. Furber & al.

47   301
68    42

Where a farm was conveyed with the free and uninterrupted use and privilege of pass-
ing and repassing over other land of the grantor in the usual passage way, and proof
was offered that such way had been used with gates and bars for forty years, and up
to the time of the grant, and that such gates and bars were necessary to the conven-
ient use of grantor's remaining land, it was *held* that this must be taken to be a grant
of the way as then existing subject to gates and bars, and a right to use it without
other or further impediment.

Trespass, *qu. cl.* Plea, general issue and brief statement that Hoyt
owned a farm and had a right of way to it over the *locus in quo*, and
that Furber was his servant.

Plaintiff was tenant of a farm owned by one Elias Frink.

Before the time of the alleged trespass, said Frink and two other per-
sons, by one deed, dated February, 1863, conveyed to Hoyt two farms
called the Twombly farm and the Thomas farm, "with the free and un-
interrupted use, liberty and privilege of passing and repassing in the
usual passage-way leading from the road leading from Frank E. Picker-
ing's to the spring, to said farms, or to said Twombly farm, together
with free ingress, egress and regress to and for the said James W. Hoyt,
his heirs and assigns, his and their tenants and under-tenants, occupiers
or possessors of said farms, intending to give the right to pass with eith-
er horse or ox teams."

The only question was, whether Hoyt's right of way was subject to
gates. The acts complained of, were, removing, and not shutting gates
in October, which Frink maintained across the passage. There was no
question of unnecessary damage done by defendants if Hoyt had a right
of way free from gates.

Plaintiff offered to show that one of the gates was necessary to keep
his cattle from escaping upon the highway, and to prevent cattle from
passing from the highway upon the farm which he occupied ; that it had
been maintained forty years before Hoyt bought his farms ; that it was
hung to the post, though thrown open at the date of Hoyt's deed ; that
the other gate, an inner one, had been maintained in the fall of every
year for the same length of time, and was necessary to be used in the
fall in shacking cattle on the farm.

The court *pro forma* rejected the evidence and ordered a nonsuit, and
plaintiff excepted.

*Frink,* for plaintiff.

I. The grant to Hoyt was of the free and uninterrupted use, liberty
and privilege of passing in the usual passage-way. The *usual* passage
way was through gates. The terms *free* and *uninterrupted* describe the
quality of his right of passage, while the term *usual* describes and qual-
ifies the way through which he may pass. The grantors covenanted
that he should not be interrupted in his right to pass over the way as it
was usually travelled.

"In the construction of grants that is doubtless to be adopted which

gives entire and liberal effect to the intention of the parties." The manifest intention of the parties to this grant was just what any reasonable construction of the words of the grant implies; that is, that the grantee should not be disturbed in his use of the way as it *usually* existed. This construction of the grant does no violence to the words used, or to the law governing such cases. Apply the words of the grant to the right of entry into and passage through a house, and would there be any doubt of the construction they would receive in such a case? Now the grantors have by the law the same right to maintain gates across this passage-way, as they have to maintain doors to their houses, and the words of grant that would divest them of that right in the one instance should do so in the other.

II. The maintaining of gates across the way is no interruption of the *grantee's right of passage.* He does not complain that the way has been made impassable or unreasonably inconvenient to him, but only asks that it shall be made more convenient. If he can reasonably enjoy his right of passage through such gates, his use, liberty and privilege of passing and repassing is free and uninterrupted. It is his use, liberty and privilege of the way that is to be free and uninterrupted and not the way itself. The way itself is only to be reasonably convenient, while his right of passing through a reasonably convenient way is not to be disturbed. *Lyman* v. *Arnold*, 5 Mason 198 ; *Johnson* v. *Kennicutt*, 2 Cushing 153.

The terms, free ingress, regress and egress, do not enlarge the grantee's rights. They have the same signification and should receive the same construction in the other terms of the grant. We often hear it said that a person has free ingress to a place. It implies no more than that his right to enter that place in some reasonable way is guaranteed.

III. We also submit that the support of gates across a way is no obstruction to the way itself, if they are maintained in a reasonably convenient manner. *Bean* v. *Coleman.* This latter case is too well fortified by decisions in other jurisdictions to require any defence here.

*Hatch*, for defendants.

I. The defendants rely upon the express grant in the deed of Frink to Hoyt of a way to be "free and uninterrupted." The description is studiously framed to prevent the obstruction of the passage by gates or bars.

II. So far as it is applicable to private ways established by express grant, as in the present instance, the defendants contend that the case of *Bean* v. *Coleman*, 44 N. H. 539, requires reconsideration and modification ; and upon this point they propose, if necessary, to be heard more at length.

BELLOWS, J. Unless, as matter of law upon the face of reserva-

tion, the defendant Hoyt is entitled to a way without gates or bars, the nonsuit must be set aside. The substance of that reservation is the free and uninterrupted use, liberty and privilege of passing and repassing in the usual passage-way over land of the plaintiff's lessor, to the farms then conveyed to Hoyt, intending to give the right to pass with either horse or ox teams.

The proof offered by the plaintiff would tend to show such passageway to have existed for forty years next preceding the conveyance in question, and that during that time one of the gates had been all the time maintained, and the other in October in each year, and that both gates were needed for the use of the farm. It is true that the gate most used, according to the proof offered, was open at the date of the deed to Hoyt, which was February, 1863; but there was nothing inconsistent with the position that the way was used with gates at the time of that conveyance.

Assuming, then, to be true what the plaintiff offered to prove, as we must do in determining this question, we must take it that the usual passage-way referred to in the deed was used with gates; and interpreted in the light of that fact, we think the grant cannot, on the case presented, as matter of law, be held to give a right of a way without gates or bars. Looking at all the words of the grant, assuming the existence of a way used with gates, and taking into consideration the unquestioned fact that the grantee was to pass and repass in that way, we think that this must be taken to be a grant of the free and uninterrupted use of the way as then existing. The grant is, indeed, carelessly and inartificially drawn, but as it is now presented, the intention to grant the use of an existing way and that only, appears to us to be manifest, and against this construction, there is nothing in the nature of the case or in the language used, except the terms "*free*" and "*uninterrupted*" use that affords much ground for discussion; but when we consider that most private ways, and many public ways, are used with bars and gates, and that provision is made by law for laying out such, we can readily perceive the propriety of using those terms in granting the use of such a way, without intending that the gates should be removed. If it be a grant of the use of an existing way which is subject to gates or bars, the provision that the grantee shall have the free and uninterrupted use of it, must be construed to mean the use of it as it then is, and subject to such gates and bars, but without other and further impediment. This qualification of the use does not imply a change of the way by removing the gates, any more than the construction of a bridge by the grantor over a brook which might at times be otherwise impassable, but rather qualifies the right of using the way as it then was.

These views are countenanced by well established principles pertaining to this subject. It is laid down in 2 Kent's Com. 537, sec. 629, that it is a principle of law that nothing passes as incident to the grant of an easement but what is requisite to the fair enjoyment of the privilege. In *Atkins* v. *Boardman*, 2 Met. 457, the same principle is recognized in an elaborate opinion by Shaw, C. J., and it is there held that the owner of the soil retains all the rights and benefits of owner-

ship consistent with the easement, the grantee having the right to use so much of the surface as shall be reasonably necessary and convenient for the purpose for which it was granted, whether as a foot or carriage way, with a right to grade and prepare it according to the nature of the use for which it was granted; and therefore, when there was a grant of a messuage on Washington street in the city of Boston, reserving to the grantor free liberty of ingress, egress and regress through a certain gate and passage-way for carrying and re-carrying wood or other things to and from the housing of the grantor, it was decided that the owner of the land so granted might lawfully build over this passage, leaving an arch of sufficient height and width for such way, considering the purpose for which it was designed, even if the passage was thereby darkened, unless so darkened as from the length of the passage to render it unfit for the purposes for which it was reserved ; see p. 475.   This case, then, shows that the reservation of a free passage does not necessarily exclude the right of the owner of the soil to build over and darken the passage, provided he leaves it reasonably fit for the use for which it is designed.

Again, in Washburn on Easements, it is laid down that where one grants a right of a private footway across his land, he may shut the *termini* of the same by gates which the grantee must open and close when using the same, unless an open way is expressly granted.   For this is cited *Maxwell* v. *M'Atee*, 9 B. Mon. (Ky.) 20, which holds that the grant of a way without any reservation of a right to maintain gates, does not necessarily imply a negation of the owner's right to do so, and this is fully sustained by the decision in *Bean* v. *Coleman*, 44 N. H. 539.

In this case the defendant conveyed land to the plaintiff reserving a passway on the southerly side of the field wall in the common wheelway.   The court hold that the owner of the land has the full dominion over and use of it, except so far as a limitation of his right is essential to the fair and reasonable enjoyment of the way, and that the fact of there being no express authority to maintain gates did not necessarily negative the right to do so, but rather that the owner of the way had a right to such reasonable use of the other's land as would be consistent with his right to occupy and improve it.

Again, in determining what is requisite to a fair enjoyment of a right of way, in the absence of express stipulations, it is competent to consider how and in what manner it has been previously used, as tending to show not only what was necessary, but by implication what was intended ; and so it is held in *Atkins* v. *Boardman & al.*, 2 Met. 464, before cited.

From this review of the cases it is evident that unless an open way is expressly granted, the owner of the land will be at liberty to use convenient gates or bars where they are required for the proper use and protection of his fields, unless the nature and objects of the way granted are such as to indicate a way not to be subject to gates and bars ; and this comes naturally from the doctrine that the owner of the land shall be permitted, in the absence of express stipulations or necessary impli-

cations to the contrary, to make all the use of the land he can consistently with the enjoyment by the grantee of a reasonably convenient way.

In view of these principles a construction of this grant that would compel the grantor to remove his gates, and fence out this way, would seem to us, as the case now stands, to be forced and unreasonable.

The nonsuit must, therefore, be set aside.